**POPE & TALBOT, a corporation,**
**Appellant,**

v.

**MATSON NAVIGATION COMPANY, a**
**corporation, Appellee.**

No. 19712.

United States Court of Appeals
Ninth Circuit.

June 7, 1965.

George W. Hellyer, Jr., Lillick, Geary, Wheat, Adams & Charles, San Francisco, Cal., for appellant.

Alan B. Aldwell, Brobeck, Phleger & Harrison, San Francisco, Cal., for appellee.

Before POPE, BROWNING and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge:

Appellant, Pope & Talbot, Inc., brought this proceeding in admiralty seeking indemnity. It is the owner of a ship which it chartered to appellee, Matson Navigation Company. Matson used the vessel to carry a cargo of bulk sugar for California & Hawaii Sugar Refining Corporation, Ltd., (C&H) from the Hawaiian Islands to Galveston, Texas. Part of the sugar was damaged in transit and C&H made claim against both Pope & Talbot and Matson for $78,058.23. This claim was ultimately settled for a total of $65,000, of which Pope & Talbot paid $63,000 and Matson paid $2,000. It was agreed between them that these payments were without prejudice to the right of either to seek contribution from the other. Pope & Talbot then brought this action to obtain a contribution from Matson and Matson cross claimed against Pope & Talbot for the $2,000 that it had advanced. The trial court denied relief to either party, and Pope & Talbot appeals.

In the trial court the parties filed a stipulation of facts. This stipulation states, among other things, that "[t]he amount of loss and damage sustained by [C&H], computed \* \* \* in accordance with usual rules applicable to the calculation of loss and damage to shipments of merchandise at sea, is $63,190 \* \* \*" It further states that "primary liability for such damages may be assumed to fall on" Pope & Talbot.

The stipulation also shows that the claim of C&H for $78,058.23 was predicated upon the provisions of a sugar freighting agreement between Matson and C&H, to which Pope & Talbot was not a party, establishing a different method of computing liability. The stipulation does not, however, state that the amount of C&H's claim as set forth in the stipulation is correct, or is correctly computed, nor does the stipulation state that if Pope & Talbot were required to pay more than the $63,190 for which it was primarily liable, Matson would be obliged to indemnify Pope & Talbot against any such excess payment. In this court, however, the parties seem to be agreed that Matson would be so liable to Pope & Talbot.

On this appeal Pope & Talbot asserts that, while it would be primarily liable for the $63,190, Matson would be primarily liable for the difference between that figure and the $78,058.23 claimed by C&H, that when the settlement was effected, both parties were benefited by it, and that under "well established principles," Matson should contribute to the settlement in proportion to the benefits realized. It suggests the following as a formula for apportioning the loss: Matson's risk was $14,868.23 and Pope & Talbot's was $63,190; the total loss was discounted, in the $65,000 settlement, by 17%; Pope & Talbot should therefore receive from Matson enough money to reduce Pope & Talbot's $63,190 liability by 17%.

The trouble with the foregoing contention is that the record does not compel any such result. The stipulation indicates that the $63,190 liability of Pope & Talbot is primary. As previously indicated, the parties seem to agree that Matson would have borne the ultimate liability for the remaining $14,868.23. However, the most that can be said is that the record shows that this amount was claimed by C&H, that the liability was denied by both Pope & Talbot and Matson, and that the existence of the claim had some effect upon the settlement. How much of an effect is entirely problematical. For all that appears from this record, Pope & Talbot and Matson may both have felt that there was no way by which they could defeat $63,190 of C&H's claim, that they might well be able to defeat the balance of C&H's claim and that, if they were not successful in doing so, Pope & Talbot, if it paid, might succeed in collecting the difference from Matson. The $2,000 paid by Matson over and above the $63,000 paid by Pope & Talbot could be both parties' estimate of the value of C&H's excess claim. The fact that this amount was paid by Matson, whereas Pope & Talbot put up all but $190 of the $63,190, strongly indicates that this was the case. This is reinforced by the statement in the stipulation that Pope & Talbot was primarily liable for the $63,190. The trial court could well have concluded that the settlement was based upon the fact that Pope & Talbot was so primarily liable and could collect from Matson only for anything that it might have to pay over that figure. The opinion of the trial court states, in substance, that the facts presented to it afford no ascertainable standards whatever upon which the court might form a judgment allocating the loss between the parties, in a manner different from what they themselves did in the settlement. In this we think the court was entirely correct.

Affirmed.