Dionisio V. DACANAY and Reynaldo C. Dacanay, by his father and next friend, Appellants,

v.

Saturnina MENDOZA, Victor P. Mendoza, and Doe Insurance Co. No. 1, Appellees.

No. 76–3136.

United States Court of Appeals, Ninth Circuit.

Feb. 21, 1978.

Rehearing and Rehearing En Banc Denied April 26, 1978.

David M. Shapiro, Jr., Agana, Guam, for appellants.

Crain & Shoecraft, Klemn & Dear, Agana, Guam, for appellees.

Before CHAMBERS, ELY and CHOY, Circuit Judges.

ELY, Circuit Judge:

Reynaldo Dacanay, a minor, appeals from an order of the District Court approving a settlement agreement made on his behalf by his father, as his next friend,[1] in respect to claims against the defendants arising from a collision between the minor's bicycle and an automobile driven by Saturnina Mendoza. The gravamen of the appeal is that the settlement agreement was repudiated by the next friend prior to its submission by the defendants for court approval and that the court incorrectly con-

---

1. The term "next friend" and its equivalent, "guardian ad litem," are used interchangeably throughout the course of this opinion. In precise legal parlance, a minor plaintiff sues by a "next friend," while a minor defendant defends by a "guardian ad litem." *Black's Law Dic-* *tionary* 834 (rev. 4th ed. 1968). The duties and powers of a minor's representative in litigation are of course identical regardless of which title appropriately applies. *See also* Fed.R.Civ.P. 17(c).

sidered the minor to be bound by the agreement unless and until the court exercised its power to undo it. Within the boundary hereinafter defined, we agree that the next friend was entitled to repudiate the tentative compromise prior to court approval thereof. Accordingly, we reverse and remand.

The accident occurred in early January, 1973. In late December of the same year, the minor initiated suit in the District Court of Guam by his father, Mr. Dacanay, as next friend. Mr. Dacanay secured counsel to prosecute the litigation. Initial investigations suggested that the negligence of Mrs. Mendoza was doubtful and that the minor's injuries were not grave and could be surgically corrected. Therefore, Mr. Dacanay agreed to settle the litigation for $5000, the limit of the Mendozas' indemnity insurance coverage.

■ The pending litigation was consequently taken off calendar. Thereafter, Mr. Dacanay moved *ex parte* in the Guam Superior Court for approval of the settlement agreement.[2] The Superior Court, however, refused to approve the compromise, apparently because counsel had not divulged sufficient facts to enable it to evaluate properly whether or not the implementation of the settlement agreement would best serve the interests of the minor. Neither party presented the proposed compromise to the Superior Court for reconsideration.

Mr. Dacanay decided not to petition the Superior Court to reconsider the settlement agreement because of a recent discovery that the minor's injuries were much more serious than initially diagnosed. It was learned that one of the boy's legs would be permanently shorter than the other. Moreover, subsequent investigations revealed that the Mendoza automobile had been travelling at a greater speed than originally thought. Convinced that the agreement was improvidently made, Mr. Dacanay notified the clerk of the federal court to restore the case to the trial calendar, correctly reciting that the Superior Court had previously "refused to approve the settlement."

The parties proceeded to prepare for trial. The Mendozas, who theretofore had been content to rely on counsel for the defendant indemnity carrier, became concerned that their liability might exceed the limits of their coverage. They therefore retained separate counsel.

The pretrial statement of the defendants did not allude to the settlement agreement, nor did the pretrial order, which was signed by all counsel. It thus appears that at that time, all recognized that the settlement of the minor's claim was not effective and "approved by the appropriate court." But a few days prior to the date set for trial, the Mendozas moved the District Court to approve the compromise agreement that the Superior Court had previously rejected.[3]

At oral argument on the motion, plaintiffs unequivocally repudiated the settlement agreement. The District Court, however, ruled that the agreement could not be repudiated. It subsequently granted the motion to approve the earlier compromise, reciting that it had examined the record and concluded that enforcement of the agreement was in the best interests of the minor.[4]

2. Submitting the agreement to the Superior Court for approval was inappropriate since the lawsuit was pending in federal district court. *See Guam Code Civ.Proc.* § 372 (1970). *See also Guam Prob. Code* § 1431 (1970).

3. On appeal, the appellants urge that the settlement contract was abandoned. We refused to entertain this argument because it was not advanced in the court below. *Moore v. Great Western Sav. & Loan Ass'n,* 513 F.2d 688, 691 (9th Cir. 1975).

4. Our review of the record indicates that at the initial hearing on the motion to enforce the settlement agreement, the District Court erroneously thought that it was not required to evaluate the fairness of the settlement. At the second and final hearing on the matter, however, the record clearly shows that the court understood its responsibility, in approving a settlement agreement, to protect the best interests of the minor. We need not and do not express an opinion as to whether the court satisfactorily investigated the dispute before concluding that the alleged settlement promoted the best interests of the minor.

If this controversy did not involve a minor litigant, there would be no serious issue concerning the ability of a party unilaterally to rescind a contract in settlement of litigation. Assuming both the power of the attorney to bind his client and the validity of the agreement struck, a litigant can no more repudiate a compromise agreement than he could disown any other binding contractual relationship. *Autera v. Robinson*, 136 U.S.App.D.C. 216, 220, 419 F.2d 1197, 1201 n.17 (1969) (dictum) & cases cited *id.* at 1200 n.9; *Cia Anon Venezolana De Navegacion v. Harris*, 374 F.2d 33, 35 (5th Cir. 1967) & cases cited *id.* at 35 n.1. Moreover, it is equally well settled in the usual litigation context that courts have inherent power summarily to enforce a settlement agreement with respect to an action pending before it; the actual merits of the controversy become inconsequential. *Meetings & Expositions, Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir. 1974); *Kukla v. National Distillers Prods. Co.*, 483 F.2d 619, 621 (6th Cir. 1973); *Autera v. Robinson, supra; see Pope & Talbot v. Matson Navigation Co.*, 347 F.2d 225 (9th Cir. 1965). The authority of a trial court to enter a judgment enforcing a settlement agreement has as its foundation the policy favoring the amicable adjustment of disputes and the concomitant avoidance of costly and time consuming litigation. *Kukla v. National Distillers Prods. Co., supra.*

■ A court, however, may not summarily enforce a tentative settlement agreement when a minor is a party to the litigation. This is because the actual merits of the controversy remain of consequence as the court must base its approval upon the fact that the terms of the settlement are completely fair to the minor. Thus, the policies and principles that apply when litigation involves adult parties are inapplica-

ble. The relationship of an adult and his attorney is in no way analogous to the relationship of a guardian ad litem and an infant. *Berry v. Chaplin*, 74 Cal.App.2d 652, 657, 169 P.2d 442, 447 (1946).

Appellants rely upon 15A C.J.S. *Compromise and Settlement* § 8 (1967) for the proposition that when "the approval or confirmation of the court in which a case is pending is essential to a valid compromise and settlement . . . , a party may repudiate the agreement prior to such approval or confirmation." Neither of the cases cited by the treatise, *Vece v. De Biase*, 46 Ill.App.2d 248, 197 N.E.2d 79, *appeal dismissed*, 31 Ill.2d 542, 202 N.E.2d 482 (1964), and *Meador v. Lewis*, 293 S.W.2d 791 (Tex. Civ.App.—Texarkana 1956, writ ref'd, n. r. e.), concerned the settlement of a claim of a minor or incompetent party. In *Vece* a party was permitted to withdraw from an oral settlement in a will contest because such settlements were not considered final until a judgment was entered or releases were signed. The court in *Meador* allowed a party to disavow an oral settlement that provided for the transfer of land, relying upon its unenforceability in court.

The rationale for permitting the repudiation of a settlement negotiated by a guardian ad litem for a minor derives from a different source. *Guam Code Civ.Proc.* § 372 (1970) requires judicial approval of a settlement agreement negotiated by a guardian ad litem. Specifically, section 372, which is patterned after *Cal.Code Civ.Proc.* § 372 (West 1973),[5] provides that "[t]he general guardian or guardian ad litem so appearing for any infant or insane or incompetent person in any suit shall have power to compromise the same and to agree to the judgment to be entered therein for or against his ward, *subject to the approval of the court* in which such suit is pending" (emphasis added).[6]

---

5. The guardian of the estate or guardian ad litem so appearing for any minor, or insane or incompetent person in any action or proceeding shall have power with the approval of the court in which such action or proceeding is pending, to compromise the same, to agree to the order or judgment to be entered therein for or against his ward . . . ..
*Cal.Code Civ.Pro.* § 372 (West 1973).

6. *See also Cal.Prob. Code* § 1431 (West Supp. 1977); *Guam Prob. Code* § 1431 (1970) (when a minor has a disputed claim for damages, a compromise or covenant not to sue is not valid until approved by Superior Court).

Our research has disclosed no reported decision by a Guam court, our court, or a California court that evaluates the quoted statutory language in respect to a repudiation of a settlement agreement prior to court approval. Indeed, we have uncovered but one case that meets, even indirectly, the precise issue posed by this appeal.[7] *Danes v. Automobile Underwriters, Inc.,* 159 Ind. App. 505, 307 N.E.2d 902, 906 (1974) (settlement of a minor's disputed claim not void ab initio but voidable until statutorily required court approval obtained).

We hold that a guardian ad litem may repudiate a settlement agreement prior to court approval. Our conclusion follows from an understanding of the role and powers of a guardian ad litem. It is an ancient precept of Anglo-American jurisprudence that infant and other incompetent parties are wards of any court called upon to measure and weigh their interests. The guardian ad litem is but an officer of the court. *Cole v. Superior Court,* 63 Cal. 86, 89 (1883); *Serway v. Galentine,* 75 Cal.App.2d 86, 170 P.2d 32 (1940). While the infant sues or is defended by a guardian ad litem or next friend, every step in the proceeding occurs under the aegis of the court. *See generally* Solender, *Guardian Ad Litem: A Valuable Representative or an Illusory Safeguard,* 7 Tex.Tech.L.Rev. 619 (1976); Note, *Guardians Ad Litem,* 45 Iowa L.Rev. 376 (1960).

As an officer of the court, the guardian ad litem traditionally lacks any personal authority whatsoever to prejudice the substantial rights of the minor litigant. *See Dixon v. United States,* 197 F.Supp. 798, 803 (W.D.S.C.1961); *Berry v. Chaplin, supra; Cloud v. Market St. Ry.,* 74 Cal.App.2d 92, 168 P.2d 191 (1946); *Benson v. Williams,* 174 Or. 404, 149 P.2d 549 (1944). California courts have not read section 372 as altering

this historical relationship. *E. g., Berry v. Chaplin, supra; Cloud v. Market St. Ry., supra.* Thus, the guardian ad litem cannot bind an infant to admissions of fact or otherwise surrender rights by stipulation or waiver.[8] *Cloud v. Market St. Ry., supra.* Indeed, from the time of the early courts of chancery a guardian ad litem has been unable to bind a minor litigant to a settlement agreement absent an independent investigation by the court and a concurring decision that the compromise fairly promotes the interests of the minor, who, as we repeat, is a ward of the court. *See The Etna,* 8 F.Cas. 803, 807–08 (D.Me.1838) (No. 4542); *Kuykendall v. Zachary,* 179 Ark. 478, 480, 16 S.W.2d 590, 591 (1929); *Leonard v. Rose,* 65 Cal.2d 589, 55 Cal.Rptr. 916, 422 P.2d 604 (1967); *Saliba v. Saliba,* 202 Ga. 279, 283–84, 42 S.E.2d 748, 752–53 (1947). Should the parties fail to submit the agreement for court approval, or should the court approve a proposed settlement without independently evaluating its fairness, then the settlement is vulnerable to attack by the minor. *E. g., Rankin v. Schofield,* 81 Ark. 440, 98 S.W. 674 (1906); *Centala v. Navrude,* 30 Mich.App. 30, 186 N.W.2d 35 (1971).

The duties of a guardian ad litem are essentially ministerial. While he may negotiate a proposed compromise to be referred to the court, he cannot render such a compromise effective merely by giving his consent. " 'His mere consent is nugatory. It is as if it were not and had never been.' " *Missouri Pac. Ry. v. Lasca,* 79 Kan. 311, 317, 99 P. 616, 618 (1909) (quoting *Tennessee Coal, Iron & R. R. v. Hayes,* 97 Ala. 201, 209, 12 So. 98, 103 (1892)). It is the court's order approving the settlement that vests the guardian ad litem with the legal power to enforce the agreement. *Leonard v. Rose, supra.*

---

7. The case of *Beliveau v. Amoskeag Mfg. Co.,* 68 N.H. 225, 40 A. 734 (1895), is inapposite. Therein the New Hampshire Supreme Court ruled that a minor could not avoid a settlement agreement filed in court by the attorney employed by the minor's next friend. Unlike the present case, New Hampshire law apparently did not require judicial approval of the settlement, and thus repudiation was not attempted until after the settlement had become final.

Moreover, the court premised its decision on a proposition that we have rejected; namely, that the acts of a minor's guardian ad litem and counsel bind the minor to the same extent as an adult party.

8. A guardian ad litem may, however, bind the minor to the procedural steps of litigation. *Cloud v. Market St. Ry., supra.*

■ The problem is best conceptualized in terms of capacity to contract. Without concurring court approval, a guardian ad litem lacks contractual capacity to settle litigation just as surely as the minor himself lacks capacity.[9] And like any other contract wherein a party lacks capacity, or when a required contractual formality has been ignored, the contract is voidable until the defect is remedied. Thus, when a statute requires that a certain kind of contract be in writing, the enforceability of an oral contract is suspended until it is put to paper. Meanwhile, the contract is invalid. *See, e. g.*, 2 *A. Corbin, Contracts* §§ 279, 284 (1950). Similarly, since the enforceability of a contract in settlement of litigation involving a minor party depends upon the approval of a court, we hold that such a contract is voidable at the election of the minor through his guardian ad litem unless and until the court's imprimatur has been placed on it. Mr. Dacanay was thus entitled to repudiate the settlement and block the motion for approval.[10]

■ Our holding does not imply that a guardian ad litem may capriciously frustrate the efforts of the adversary of a minor litigant to negotiate a fair settlement. As emphasized above, the binding characteristic of the settlement derives from the approval of the court and not from the consent of the guardian ad litem, who is but an officer of the court. Therefore, an obdurate guardian ad litem cannot with impunity foreclose the court from directing a proposed settlement; otherwise, the court's jurisdiction over the minor as a ward of the court would be surrendered to one of the court's own officers. *See, e. g., Naujokas v. H. Frank Carey High School*, 57 Misc.2d 175, 179, 292 N.Y.S.2d 196, 201 (Sup.Ct. 1968); *Lee v. Gucker*, 16 Misc.2d 346, 348, 186 N.Y.S.2d 700, 703 (Sup.Ct.1959).

■ While the court will examine the repudiation by a guardian ad litem of a settlement, the standard of review is not the same as for court approval of a settlement continuously consented to by both parties. When a guardian ad litem accepts a settlement and submits it to the court for approval, the court must conduct its own inquiry to determine whether the settlement serves the best interests of the minor. Such thoroughness of review is inappropriate when a guardian has repudiated a settlement. Because the Guam statute reflects the policy that the interests of the minor are generally best served when *both* the court and the guardian ad litem agree that the proposed settlement is fair, the decision of the guardian deserves some deference. Consequently, we believe that the court has limited power to direct a settlement unilaterally, but to do so, the court must first find that the guardian ad litem has acted arbitrarily and capriciously in the sense that his conduct is inimical to the best interests of the court's ward.

In this case there is no indication that the guardian was acting arbitrarily and capriciously when he repudiated the initial proposed settlement agreement, which was of no effect until it had been sanctioned by the court's approval. Accordingly, the Order is reversed, and the case is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

CHAMBERS, Circuit Judge, dissenting:

I respectfully dissent.

Nothing in the law of Guam or California requires us to allow the guardian ad litem of a minor to repudiate a settlement agreement prior to court approval under the Guam statute. I would not let him do so. The majority's holding affords the minor no greater protection. Should the guardian ad

---

**9.** This is not to imply that a legislative body could not invest a guardian ad litem with the personal authority to bind a minor to a settlement. It is clear however, that California, and by implication Guam, have not done so pursuant to § 372 of their respective codes of civil procedure.

**10.** We do not reach the question whether the adult party enjoys correlative rights to repudiate a settlement agreement reached with a guardian ad litem. The general rule is that a competent party to a contract acts at his own risk and cannot void the contract on the ground of the incompetence of his adversary party. *J. Calamari & J. Perillo, Contracts* § 122 (1970).

litem discover that the settlement offer was improvidently accepted, he should have sufficient evidence to convince the reviewing court that the settlement was not in the minor's best interests. And the majority's holding may discourage litigants from settling claims involving minors since the guardian ad litem is now free to change his mind until the moment the court approves it. I would hold that once the guardian ad litem has agreed to a settlement it must be reviewed by the court to determine whether it is in the minor's best interests or whether the guardian should be allowed to repudiate it.

## ORDER ON PETITION FOR REHEARING

■ For the first time, in their Petition for Rehearing, the appellees urge the applicability of section 1544 of the Guam Civil Code.[1] That section permits an injured person who has settled his claim within fifteen days after the date of his injury to disavow the settlement agreement at any time within one year of the making of the speedy agreement. The appellees argue that the tentative settlement in this case is not one of the class for which section 1544 allows repudiation,[2] and therefore, by

implication, the guardian ad litem did not have the power to repudiate.

We reject such a statutory construction. Section 1544 deals only with the type of settlement known as a "rush release" and in no way addresses the question with which we are concerned: When can a guardian ad litem, on behalf of a minor, repudiate a settlement? Section 1544, to be sure, would permit a minor or his guardian to disavow a "rush release," but it does not expressly deny a minor the right to withdraw from other settlement agreements after the institution of suit and prior to judicial approval. To preserve the traditional protections afforded a minor by the state, we decline so to construe it. Thus, as applied to the rights of minors, section 1544 is nonexclusive. Our reading of section 1544 is consistent with and, in fact, stems from the core of our decision, i. e., as to a minor, a valid, enforceable settlement agreement cannot exist until the agreement bears the court's imprimatur.

Of the judges constituting the panel originally concerned with the subject case (CHAMBERS, ELY, and CHOY), Judges CHOY and ELY vote to deny the Petition for Rehearing and to reject the suggestion for en banc rehearing. Judge CHAMBERS would grant panel rehearing, but all three

---

1. Guam Civil Code § 1544 (1970) provides, in pertinent part:

Releases in personal injury. Any agreement entered into on or after the effective date of this Act by any person within fifteen (15) days after he incurs a personal injury, which is related to his right to be compensated for such injury, including but not limited to agreements relating to waivers of procedural or other rights, may be disavowed in writing by such injured person or, in the case of a minor, also by his parent or guardian, within one (1) year after the making of the agreement. No agreement disavowed may be introduced as evidence in any judicial or administrative proceeding. In order to be effective, any such disavowal shall be sent by registered mail to the person by whom it was obtained or on whose behalf it was obtained, or to the attorney of the defendant against whom action is brought for such personal injury, at the last known

address of such person or attorney, and no disavowal shall be ineffective because unaccompanied by an offer to return any consideration accepted on account of the agreement. In lieu of making a disavowal by registered mail as provided herein, such disavowal may be made by a pleading in an appropriate action or proceeding provided that such pleading is filed within one (1) year after the making of the agreement disavowed.

2. The accident occurred on January 2, 1973. The record does not indicate when the guardian made his informal agreeement. The agreement was presented to the Guam Superior Court for approval on October 31, 1974. In their Petition for Rehearing appellees concede that the tentative settlement is not one of the class of agreements eligible for repudiation under section 1544.

judges concerned vote to reject the en banc suggestion.

The full court has been advised of the suggestion for en banc rehearing, as well as of the addition to the Opinion, contained in this Order, and no judge of the court has requested a vote on the suggestion for rehearing en banc. Fed.R.App.P. 35(b).

The Petition for Rehearing is denied, and the suggestion for a rehearing en banc is rejected.