*In re* ESTATE OF JANE E. DAWSON, Deceased (William H. Alexander, Ex'r of the Will of Jane E. Dawson, Plaintiff and Separate-Appellant, v. The Harris Trust & Savings Bank, as Trustee, *et al.*, Defendants-Appellees (John Dawson, Defendant-Appellant)).

First District (1st Division)   No. 86—3000

Opinion filed March 28, 1988.

Foss, Schuman, Drake & Barnard, of Chicago (Morton John Barnard, of counsel), for appellant John Dawson.

Alexander & Alexander, of Chicago (James L. Alexander, of counsel), for appellant William H. Alexander.

Deneen, Stone & Neese, Ltd., of Woodstock (David N. Stone, of counsel), for appellees.

JUSTICE BUCKLEY delivered the opinion of the court:
This dispute presents the question whether a child born and adopted after a trust is executed is intended to be included within the term "child" or "heir-at-law" as used within the language of a trust. The trust in question was executed on January 3, 1928, by Walter H. Eckert (Walter), an attorney. The trust transferred assets to Walter's wife, Georgia, and himself as trustees. Walter and Georgia had one child, Jane, who was about 17 years of age at the time the trust was executed. No other child was born to or adopted by Walter and Georgia.

The trust provided as follows:

"I. During the lifetime of the Depositor, WALTER H. ECKERT, the Trustees shall pay over all of the net income of said trust estate to him for use and/or distribution as he may see fit and he shall have full power and authority to at all times collect such income, and if necessary, endorse the name or names of the remaining trustee on all dividend or other checks or orders evidencing the income from said trust estate or on checks or orders necessary for the distribution of such income.

II. In the event that the said GEORGIA J. ECKERT [Walter's wife] shall survive the Depositor then the income

from said trust estate shall on the death of the Depositor be paid to her for and during her natural life, such payments to be made monthly, quarterly, yearly or semi-annually as said Trustees may see fit.

III. Upon the death of the said GEORGIA J. ECKERT, or in the event of her death before the decease of the Depositor, then upon the death of the Depositor, the income from said trust estate shall be paid to JANE ECKERT, (the daughter of the said Depositor and the said GEORGIA J. ECKERT) for and during her natural life. Such income to be paid to her either monthly, quarterly or semi-annually as said Trustees may elect and as shall be for the best interests of this trust (the wish but not the direction of the Depositor being that such income be paid monthly.)

IV. Upon the death of JANE ECKERT, the principal from said *trust estate shall be paid to her child or children, share and share alike, provided that in the event of the death of any surviving, then such child or children shall receive the share which the child of JANE ECKERT would have received if living. In the event of the death of said JANE ECKERT leaving her no child or children surviving and no child or children of such child or children, then said trust estate shall be paid to the heirs-at-law of the Depositor* unless said JANE ECKERT shall leave a husband surviving, who shall be living with her at the date of her decease, in which event one-half of said trust estate shall be paid to such husband and the remaining one-half shall be paid to the heirs-at-law of the Depositor." (Emphasis added.)

Walter died September 5, 1944. He was survived by Georgia and Jane.

Jane had been married once to F. Alan Dawson. Dawson predeceased Jane. Jane did not give birth to any children. However, she did adopt a child, John Dawson (John), on February 21, 1951.

Georgia died June 9, 1976, survived by Jane and John. The bulk of Georgia's estate was distributed to Jane.

On November 29, 1983, Jane died, survived by John as her only heir. Jane's will provided in relevant part as follows:

"*THIRD*: My father, Walter H. Eckert, entered into an agreement on January 3, 1928 creating a trust which, at his death in September, 1944, comprised substantially all of his estate. Said agreement provided for benefits to him during his lifetime and to his wife, my mother who survived him * * *.

\* \* \*

It is my belief that my adopted son, JOHN A. DAWSON, will upon my death inherit that trust estate. It is my further belief that my father would have so intended and that, had he known of my inability to bear children, he would have so provided for my adopted children, as did my mother, who died after the adoption of John. So believing, I give the remainder of my estate to STUART BLAIR BASQUIN \*\*\*, Provided, however, that if it is determined by a court that said son is not a 'child' of mine, or an 'heir' of my father, I give said remainder of my estate to CHARLES D. KIMBELL \*\*\* [as trustee for John A. Dawson]."

The executor of Jane's will sued for a construction of the will and Walter's trust and for declaratory relief to have Harris Bank & Trust, the trustee of Walter's estate, distribute Walter's estate to John. The court construed the will and trust and denied the executor declaratory relief. It ruled that since John was born and adopted after Walter's death, he was not a "child" of Jane within the meaning of the trust. It further held that Walter intended to exclude adopted children from the class of "heirs-at-law" as provided in the trust. It distributed Jane's estate to Charles D. Kimbell as trustee for John and held that Walter's estate was distributable to the descendants of his grandparents. Some of these descendants were not determined at the time of the court's judgment. John and the executor of Jane's will both appeal this judgment.

■ The primary concern in construing a trust is to ascertain the intent of the donor at the time the trust was executed. (*First National Bank of Chicago v. Canton Council of Campfire Girls, Inc.* (1981), 85 Ill. 2d 507, 513, 426 N.E.2d 1198, 1201.) In determining intent, the court must consider the entire document, giving words their plain and ordinary meaning. (*Warren Boynton State Bank v. Wallbaum* (1986), 143 Ill. App. 3d 628, 632-33, 493 N.E.2d 21, 25.) Moreover, the disposition of a trust must be made according to the law applicable when the trust was created. *Belfield v. Findlay* (1945), 389 Ill. 526, 529, 60 N.E.2d 403, 406.

■ We begin our analysis by examining the language of the trust at issue to determine Walter's intent. The trust provides that upon Jane's death the trust estate "shall be paid to her child or children, share and share alike." The term "child or children," we believe, designates a class which would include an adopted child of Jane. The language used does not expressly or implicitly restrict distribution to blood descendants of Jane. By using the language "child or children"

Walter intended to include John as an adopted child of Jane.

The instant case is in sharp contrast to *Smith v. Thomas* (1925), 317 Ill. 150, 147 N.E. 788. In *Smith*, the testator stated in his will that his desire was "to create and preserve for my grandchildren and their heirs an estate having a steady permanent income." (317 Ill. at 158, 147 N.E. at 791.) In light of this language, the court held that an adopted son of the testator's son was not the testator's grandchild and therefore he could not inherit under the will.

In the instant case, John's right to inherit is not dependent on his status as a grandchild of Walter. Instead, it depends on his status as a child of Jane. Unlike the adopted son in *Smith*, John fits squarely within the class entitled to inherit.

We do not believe that the adoption statute in effect in 1928, the year Walter executed his trust, prohibits John from inheriting the trust estate. The statute sets out a general premise that adopted children are not limited in their ability to inherit from their adoptive parents, subject to two exceptions. The first exception prohibits adopted children from inheriting property "expressly limited to the body or bodies of the parents by adoption." (Ill. Rev. Stat. 1927, ch. 4, par. 5.) The second exception prohibits adopted children from inheriting "property from the lineal or collateral kindred of such parents by right of representation." Ill. Rev. Stat. 1927, ch. 4, par. 5.

The first exception clearly does not apply to the instant case, because the trust estate was not expressly limited to the body of Jane. Rather, the estate was to pass to her child upon her death.

The court in *Keegan v. Geraghty* (1881), 101 Ill. 26, construed the second exception, which was the same as the law in effect in 1928. It held that an adopted child could not inherit from a collateral kindred in place of her adoptive parents under the intestacy laws. The court reasoned as follows:

> "And when such an adoptive parent dies intestate, having had no children born to him in wedlock, it is reasonable and just that the property he leaves should go to a stranger to his blood, his adopted child. *** But another person, who has never been a party to any adoption proceeding, who has never desired or requested to have such artificial relation established as to himself, why should his property be subjected to such an unnatural course of descent?" (101 Ill. at 35.)

The court concluded the adoption statute prohibited an adopted child from inheriting an intestate share from anyone other than the adoptive parents.

Under *Keegan*, the second exception does not apply to the instant

case. John is not seeking to inherit an *intestate* share from a lineal kindred. Instead, he is seeking to inherit according to the terms of the trust as the sole surviving child of Jane.

We do not believe that *Belfield v. Findlay* (1945), 389 Ill. 526, 60 N.E.2d 403, controls here, because a testator is presumed to make his trust in view of the law in existence at the time the instrument was created. (*Munie v. Gruenewald* (1919), 289 Ill. 468, 472, 124 N.E. 605, 607; *Rudolph v. Rudolph* (1904), 207 Ill. 266, 278, 69 N.E. 834, 838.) Since *Belfield* was decided many years after the trust was created and even after Walter had died, we cannot presume that Walter had *Belfield* in mind when he prepared his trust.

In sum, Walter manifested an intention to devise his trust estate to a child of Jane. John is the only member of that class. Neither the adoption statute, nor the case law in effect when Walter drafted his trust, contravenes this conclusion. John is entitled to receive Walter's trust estate as a child of Jane. Because of our disposition of this case, we need not address the other issues raised.

The appellees, the ascertained descendants of Walter's grandparents, filed a motion, taken with the case, to dismiss the separate appeal of William H. Alexander, the executor. They claim that Alexander was a mere stakeholder, and took no position before the trial court, barring him from maintaining an appeal.

■ This motion is without merit for several reasons. First, Alexander was not a stakeholder. A stakeholder is one who has control over the subject matter of the controversy in which he has no interest and against whom relief is demanded by rival claimants. A stakeholder stands perfectly indifferent between the claimants. (See *Platte Valley State Bank v. National Live Stock Bank* (1895), 155 Ill. 250, 257, 40 N.E. 621, 623; Black's Law Dictionary 729 (Abridged 5th ed. 1983).) In the instant case, Alexander had no control over the stake, the corpus of the trust. Harris Bank, as trustee, was the true stakeholder. Moreover, it is clear from the record that Alexander took the position that the trust should be distributed to John. He was not perfectly neutral between the rival claimants.

Assuming, *arguendo,* Alexander was the stakeholder, this fact would not preclude him from pursuing a separate appeal. It is well-established law that a party to the record may appeal if he considers himself aggrieved by the judgment. (*Vece v. DeBiase* (1964), 31 Ill. 2d 542, 544-45, 202 N.E.2d 482, 483; *Harrison v. Kamp* (1946), 395 Ill. 11, 18, 69 N.E.2d 261, 266; *Trompeter Construction Co. v. First Federal Savings & Loan Association* (1978), 62 Ill. App. 3d 173, 175, 379 N.E.2d 298, 300.) When a party to the record files a timely notice of

appeal, the appellate court has subject matter jurisdiction to hear the case. *Vece v. DeBiase* (1964), 31 Ill. 2d 542, 544-45, 202 N.E.2d 482, 484; 107 Ill. 2d R. 301.

Under these circumstances, Alexander is a party to the record who has filed a timely notice of appeal. He has a right to pursue a separate appeal. Thus, appellee's motion to dismiss Alexander's separate appeal is denied.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and remanded for further proceedings consistent with this decision.

Reversed and remanded.

CAMPBELL, P.J., and QUINLAN, J., concur.